IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TERESA GUERRA, *et al.*, | |
| Plaintiffs, | |
| v. | 2:24-CV-065-Z-BR |
| CHILDRESS COUNTY, TEXAS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion") (ECF No. 13), filed May 30, 2024. Plaintiffs responded on July 10, 2024, after receiving an extension of time to file a response. ECF Nos. 15, 26. Defendant replied on July 24, 2024. ECF No. 28. Having reviewed the briefing and the relevant law, the Court **GRANTS** the Motion.

Defendant had a prior Motion to Dismiss for Failure to State a Claim (ECF No. 7), filed April 25, 2024. After Defendant filed this motion, Plaintiffs filed an Amended Complaint on May 16, 2024 (ECF No. 11). As a result, Defendant's first Motion to Dismiss for Failure to State a Claim is moot. *See Bridgestone Ams. Tire Operations, LLC v. Speedways Tyres Ltd.*, No. 4:22-cv-0145, 2023 WL 2574576, at *2 (N.D. Tex. Mar. 20, 2023) ("An amended complaint generally renders pending motions moot."); *Garza-Selcer v. 1600 Pac. Subtenant, LLC*, No. 3:15-cv-03791, 2016 WL 11474103, at *2 (N.D. Tex. Aug. 30, 2016) ("When a motion to dismiss is filed against a superseded complaint, courts ordinarily deny the motion as moot."). Accordingly, the Court **DENIES AS MOOT** Defendant's first Motion to Dismiss for Failure to State a Claim.

### BACKGROUND

The Childress County Sheriff's Department arrested Rodney Paul Guerra on January 22, 2022. ECF No. 11 at 7. During Mr. Guerra's booking, jail staff collected several forms and other

information. *Id.* One of those forms had a medical page and comments section where staff recorded that Mr. Guerra would hear sounds others did not, had a history of hepatitis C, and should sleep on a bottom bunk in jail. *Id.* Another separate form, the Screening Form for Suicide and Medical/Mental/Developmental Impairments, had a handwritten note stating Mr. Guerra had a seizure two weeks before arrest and that he took an antibiotic for his leg. *Id.* Mr. Guerra had experienced his first grand mal seizure eighteen days before his arrest. ECF No. 13 at 12. He underwent treatment at a hospital for this seizure. *Id.*

Mr. Guerra stayed in pretrial detainment without incident from January 22 to April 8. ECF No. 13 at 11, 13 ("Plaintiffs also do not allege Mr. Guerra had seizures in the Childress County Jail . . . ."). On April 8 at 4:28 AM, jail officials found Mr. Guerra sitting up in his bunk, foam around his mouth, dead from an apparent seizure. ECF No. 26 at 7; ECF No. 11 at 9. His core body temperature measured 91.2 degrees and rigor mortis had set in. ECF No. 26 at 7. He "appeared to be deceased for some time." ECF No. 11 at 8 (internal quotation omitted). Investigations followed. ECF No. 11 at 9–15. Childress County, the Texas Rangers, and the Texas Commission on Jail Standards ("TCJS") all investigated. *Id.* Plaintiffs filed this suit on April 3, 2024, alleging a violation of the Fourteenth Amendment under 42 U.S.C. § 1983 and claim municipal *Monell* liability, an unconstitutional conditions of confinement claim, and an episodic act or omissions claim. ECF No. 11 at 24–32.

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits courts to dismiss suits if the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on

its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. While a complaint "does not need detailed factual allegations," the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The suit need not probably succeed, but it must have "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court uses its "judicial experience and common sense" to evaluate whether a complaint holds a plausible claim of relief. *Id.* at 679. At this stage, the Court construes well-pled facts in the complaint "as true and 'view[s] them in the light most favorable to the plaintiff.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original)). But the Court need not accept plaintiff's conclusory allegations and legal conclusions as true. *Iqbal*, 556 U.S. at 679.

### ANALYSIS

The Court finds that Plaintiffs have failed to state a Section 1983 claim under either *Monell*, a conditions of confinement theory, or an episodic acts or omissions theory. Section 1983 permits plaintiffs to bring an action when their constitutional or federal statutory rights are violated if the alleged violator is acting "under color of any statute, ordinance, regulation, custom, or usage" of a state. 42 U.S.C. § 1983. To avoid dismissal, a plaintiff need plead specific facts and claim a cognizable constitutional violation. *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988).

### I. *Monell*

A municipality may be a "person" under Section 1983 and thus held liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But it may not be held liable simply because one of its employees is a "tortfeasor." *Id.* at 691. Instead, to hold a municipality liable under *Monell*, a plaintiff "must plead facts that plausibly establish that '(1) an official policy (2) promulgated by the municipal

policymaker (3) was the moving force behind the violation of a constitutional right.'" *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

### A. Official Policy or Custom

An official policy can be shown by (1) an explicit policy statement, ordinance, regulation or decision officially adopted or promulgated; or (2) a custom that is the "persistent, widespread practice" of municipal official or employees and is "so common and well settled" that it "fairly represents municipal policy." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (footnote omitted); *see also St. Maron Props.*, 78 F.4th at 760. To be a custom, harms must come from more than just random acts or isolated incidents. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."). Instead, a plaintiff must allege a pattern of behavior with "sufficiently numerous prior incidents." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Pineda*, 291 F.3d at 329 n.12 (finding eleven prior incidents like the alleged violation did not support a pattern). Such pattern of behavior "requires similarity and specificity" to the harm plaintiffs allege. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). In other words, they must be "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).

"A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The policymaker may constructively know of the policy if not actually. *See Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 511 (5th Cir. 2022). A policymaker constructively knows of the

policy only if the "violations were so persistent and widespread that they were the subject of prolonged public discussion." *Pineda*, 291 F.3d at 330 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)). In short, the alleged custom must "have occurred for so long or *so frequently* that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the *expected, accepted practice*." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (emphasis added) (quoting *Peterson*, 588 F.3d at 850).

Plaintiffs allege no explicit policy statement, ordinance, regulation, or decision officially adopted or promulgated. Therefore, they must allege a custom or practice. They fail to do so. Plaintiffs focus on three overarching policies they allege are County policies, practices, or customs. First, they claim the County had a policy or custom of failing to provide emergency or necessary medical care. Second, they claim a policy or custom of failing to monitor prisoners. ECF No. 24 at 22–25. Third, they claim a policy or custom of failing to train staff. ECF No. 11 at 27. Plaintiffs note myriad other failures of the jail, including not having kitchen equipment inspected, failing to do generator load tests, and failing to report inmates' veteran statuses. ECF Nos. 13 at 19–21; 11 at 28. But without tying these to an alleged policy or custom of the County, the Court need not delve line by line into each minute failure of the jail. Thus, the primary alleged customs are the focus.

Plaintiffs' alleged custom or policy of failing to provide emergency or necessary medical care cannot succeed. They argue they need not provide "specific examples" of the alleged custom or policy. ECF No. 26 at 20. And they are right. *See Moore*, 41 F.4th at 509. But they do need to allege evidence that a custom or policy existed which was "so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Plaintiffs failed to do so.

In *Moore*, the plaintiffs had record evidence explicitly demonstrating the custom at issue. *Id.* at 509–10. And in *Weisshaus v. Teichelman*, the plaintiff's conclusory allegations that traffic stops were prolonged due to an unconstitutional practice were "not enough." No. 22-11099, 2024 WL 620372, at *6 (5th Cir. Feb. 14, 2024). Rather, to survive a motion to dismiss, a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Balle v. Nueces County*, 952 F.3d 552, 559 (5th Cir. 2017) (omission in original) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Any specific facts alleged are of course assumed true at this stage, but conclusory claims that a policy or custom existed are not.

Here, Plaintiffs cannot muster specific facts to show that a wrongful failure to provide necessary or emergency medical care customs existed. Plaintiffs' primary factual allegations that the County had a policy of failing to provide medical care to detainees is that the jail had failed previous TJCS inspections in part because they had failed to test at least "two specific detainees" for tuberculosis, as required. ECF No. 11 at 17–19. These failures to test for tuberculosis within the allotted time occurred in 2013, 2015, and 2016, between six and nine years prior to Mr. Guerra's death. *Id.* at 16–19. And far from demonstrating a "persistent, widespread practice" of failing to provide necessary medical care, they simply allege a handful of errors on jail officials' part in the past. *Pineda*, 291 F.3d at 328. Three instances of missed tuberculosis testing, taken as true, do not allege facts sufficient to demonstrate a deep-rooted practice of failing to provide needed medical care that is "so common and well settled" that it "fairly represents municipal policy." *Id.* Even more, failures to test for tuberculosis, stretched far as a failure to provide medical care, are not sufficiently similar to a failure to treat Mr. Guerra for his past seizure. *See Peterson*, 588 F.3d at 851. Without more, Plaintiffs

fail to plead that the County had a "force of law" policy of failing to provide medical care to inmates. *See Moore*, 41 F.4th at 509.

Nor do they sufficiently allege a failure to monitor *custom*. Plaintiffs allege that Childress County filed to adequately monitor detainees. ECF Nos. 11 at 27; 26 at 20. Other than baldly alleging that such a policy existed, Plaintiffs again point to the TJCS inspections to tie facts to conclusory claims. ECF Nos. 11 at 27; 26 at 20. By Plaintiffs' count, the TJCS inspections found the County failed to monitor detainees thrice. ECF Nos. 26 at 20; 11 at 18, 22, 23. None point to a "persistent, widespread practice" of failing to monitor detainees. *Pineda*, 291 F.3d at 328. On one day in 2015, the Childress County jail failed to monitor detainees within the maximum 60-minute intervals. ECF No. 11 at 18. And seven years later, Childress County jail had on occasion exceeded the monitoring interval by one to fifteen minutes. *Id.* at 22. Then, in 2023, the jail occasionally exceeded the monitoring interval by one to five minutes. *Id.* at 23. Isolated instances of exceeding a monitoring deadline do not point to a custom, so "common and well-settled," that jail employees would have understood their superiors to require, with the "force of law," such failures. *Pineda*, 291 F.3d at 328; *Moore*, 41 F.4th at 509. Plaintiffs sufficiently plead that Childress County jail occasionally missed a monitoring deadline by a few minutes. But they do not sufficiently plead that these failures establish an underlying custom that was the "expected, accepted practice" of policymakers. *Davidson*, 848 F.3d at 396 (quoting *Peterson*, 588 F.3d at 850).

So too for Plaintiffs' allegations of a custom for failure to train jail employees. Plaintiffs allege that Childress County failed to "train jailers regarding detainee safety." ECF No. 26 at 20. Often, plaintiffs separately allege a failure to train claim under *Monell* instead of alleging the municipality had a custom of failing to train. *See, e.g., Ratliff v. Aransas Cnty.*, 948 F.3d 281, 283 (5th Cir. 2020) (analyzing a failure to train claim separately from an official custom claim).

But here Plaintiffs clearly argue the failure to train is a custom of Childress County and do not argue it as a separate claim. *See* ECF Nos. 11 at 15, 27; 26 at 7, 9–10, 20, 24. Plaintiffs fail to plausibly allege facts pointing to a custom of failing to train jail employees regarding detainee safety. ECF No. 26 at 20. Plaintiffs again point to the TJCS inspection reports to attempt to demonstrate a failure to train custom. *Id.* And again, none allege facts pointing to a custom of failing to train. In fact, Plaintiffs attempt to argue that TJCS ordering *remedial* training in response to other assorted jail failures demonstrates a custom of failing to train. ECF No. 11 at 21, 22, 24. They do not.

The other instances show that Childress County did not meet minimum training standards for a handful of jailers on largely unrelated issues. For example, Childress County did not train some jailers on emergency drills immediately upon employment. *Id.* at 17. And it failed to document life safety and emergency training for a few months in another instance. *Id.* at 19. In 2021, the jail did not provide life safety training. *Id.* at 21. And in 2022, one-hour suicide prevention training had not occurred. *Id.* at 22. In several of these instances, TJCS ordered jail officials to remedy the oversights and Plaintiffs point to no facts establishing they did not do so. Isolated failures cannot rise to a custom with the "force of law" if officials take remedial actions counteracting the very custom Plaintiffs allege. A handful of unrelated training oversights do not plausibly allege the existence of an entrenched, well-settled custom that jail officials tacitly approve. And even if the TJCS reports showed more, jail officials taking steps to overcome their discovered oversights stands in direct opposition to the existence of a custom. Even more, none of the jail's past alleged failures are sufficiently similar to any potential training failures that caused Mr. Guerra's death. *See Davidson*, 848 F.3d at 396. Failures to train on life safety, suicide, or emergency drills are all unlike a failure to train jail staff on how to treat seizure disorders and the like.

### B. The Remaining *Monell* Elements

A failure to plausibly allege an official custom or policy is sufficient for dismissal of a *Monell* claim. The Court nevertheless analyzes the remaining *Monell* elements. Plaintiffs sufficiently plead a policymaker. ECF No. 11 at 30. A *Monell* claim requires the municipal policymaker promulgate the policy. *See St. Maron Props.*, 78 F.4th at 760. The relevant policymaker is determined by state law. In Texas, the sheriff is a county's "final policymaker in the area of law enforcement" and in county jails. *Colle v. Brazos Cnty.*, 981 F.2d 237, 244 (5th Cir. 1993); *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020). Plaintiffs correctly argue they need not specifically identify the relevant policymaker. ECF No. 26 at 15 n.5; *Groden v. City of Dallas*, 826 F.3d 280, 283–84 (5th Cir. 2016). Plaintiffs do overread *Groden*, however. *Groden* still required a plaintiff to plead facts read in the light most favorable to plaintiff that demonstrated "that the statutorily authorized policymaker promulgated an unconstitutional policy," even if that person's specific identity was not pled. *Id.* at 285. In *Groden*, the plaintiff pled facts that alleged "that the city council promulgated or ratified an unconstitutional policy." *Id.* at 286. And here, Plaintiffs have alleged that the sheriff was the relevant policymaker. ECF No. 11 at 30.

The final *Monell* element requires the alleged policy or custom is the moving force behind the constitutional violation. *See St. Maron Props.*, 78 F.4th at 760. To prevail, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added). The degree of culpability the plaintiff needs to allege is at least "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow" the officials' decisions. *Id.* at 411, 404 (plaintiff must demonstrate "*deliberate* conduct" on the part of the municipality). Deliberate indifference is an

9

"extremely high standard to meet." *Austin v. City of Pasadena*, 74 F.4th 312, 328 (5th Cir. 2023) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). It requires showing "a pattern of similar violations" that come from a policy or custom "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Alternatively, deliberate indifference may be shown even for a single incident under a limited exception to the pattern requirement, if "the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the *highly predictable* consequence of a particular policy." *Burge*, 336 F.3d at 373 (emphasis added). Through either route, showing "simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542 (quoting *Piotrowski*, 237 F.3d at 579). Instead, the jail official must *both* "know of and disregard an excessive risk to inmate health or safety." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 464 (5th Cir. 2015). This requires both being "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and then also actually "draw[ing] the inference." *Id.* (quoting *Est. of Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011)). Nor will pleading facts that show "[u]nsuccessful medical treatment" or "medical malpractice" sufficiently allege deliberate indifference on the part of jail officials. *Ford v. Anderson Cnty.*, 102 F.4th 292, 307 (5th Cir. 2024) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (alteration in original).

Plaintiffs do not sufficiently plead facts alleging the deliberate indifference culpability standard was met. Plaintiffs plead two main facts that, assumed true, cannot sustain "*deliberate conduct*" on the part of jail officials. *Brown*, 520 U.S. at 404. First, Plaintiffs allege that one of Mr. Guerra's intake forms noted he needed a bottom bunk in his cell. They argue this demonstrates jail officials had knowledge of Mr. Guerra's seizure disorder. ECF No. 11 at 7. Second, they claim that

Mr. Guerra's Screening Form for Suicide and Medical/Mental/Developmental Impairments had a handwritten note indicating Mr. Guerra had a seizure two weeks before arrest. This, they infer, means jail officials had knowledge of Mr. Guerra's seizure disorder. *Id.* at 7–8. To tie it all together, Plaintiffs flatly claim that jail officials knew Mr. Guerra had a serious medical condition that required treatment and still deliberately chose to not treat him. *Id.* at 29–30. But of course, conclusory statements are not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 678–79. Thus, Plaintiffs must argue these two factual allegations sufficiently plead deliberate indifference on the part of jail officials.

But they cannot. First, as explained, Plaintiffs do not sufficiently demonstrate a pattern of similar, past violations arising from a policy or custom that would be "obviously likely to result in a constitutional violation." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). At best, Plaintiffs allege facts demonstrating jail officials would fail to medically care for detainees by missing tuberculosis testing. Nowhere do Plaintiffs allege a pattern where detainees with similar serious medical conditions simply had no treatment at all. Under the single incident approach, Plaintiffs do not demonstrate facts alleging deliberate indifference either. Jail officials could not find it *highly predictable* that a detainee with a bottom bunk restriction and who had his "*first*" seizure two weeks prior would die if not treated for a seizure *disorder*. ECF No. 11 at 6 (emphasis added); *Burge*, 336 F.3d at 373. Even if Plaintiffs' allegation that jail officials knew of Mr. Guerra's past seizure is assumed true, Plaintiffs' facts do not allege jail officials deliberately chose not to treat Mr. Guerra for a seizure disorder out of indifference. In other words, Plaintiffs do not allege that jail officials, even if they knew about Mr. Guerra's past seizure, "actually 'dr[ew] the inference'" that a "substantial risk of serious harm exists." *Rangel v. Wellpath, LLC*, No. 5:23-cv-128, 2024 WL 1160913, at *13 (N.D. Tex. Mar. 18, 2024) (quoting *Est. of Henson*, 795 F.3d at 464).

At best, Plaintiffs plead negligence or perhaps medical malpractice. Jail officials, seeing the handwritten note appended to an intake form about a past seizure, likely should have inquired whether Mr. Guerra suffered from a seizure disorder. And that inquiry should have informed whether he needed treatment while detained. But Plaintiffs have not alleged anything more than that jail officials may have known Mr. Guerra had once suffered from a seizure. They do not even allege that Mr. Guerra was ever diagnosed with a seizure disorder, only that he had a prior seizure. Setting aside Plaintiffs' conclusory assertions, Plaintiffs' pleadings may rise to "simple or even heightened negligence." *Valle*, 613 F.3d at 542 (quoting *Piotrowski*, 237 F.3d at 579). These "will not suffice." *Id.*

## II. Conditions of Confinement

Plaintiffs further plead a conditions-of-confinement claim. ECF No. 11 at 26. A conditions-of-confinement claim argues the "general conditions, practices, rules, or restrictions of pretrial confinement" are unconstitutional. *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). The conditions must "amount to punishment" violating the Due Process Clause prohibition on punishment prior to conviction. *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Bell*, 441 U.S. at 535. A plaintiff must show "a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'action or omissions' of jail officials — that is not reasonably related to a legitimate government objective and that caused the constitutional violation." *Id.* (quoting *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)). To do so, a plaintiff must allege "a *pervasive pattern* of serious deficiencies in providing for [the detainee's] basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009) (emphasis added). Thus, "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."

*Id.* Showing a pattern sufficient for a conditions-of-confinement claim "is a heavy burden, one that has rarely been met in our caselaw." *Shepherd*, 591 F.3d at 452.

If these requirements sound familiar, it is because they echo *Monell*. The Fifth Circuit has explicitly connected *Monell* claims with conditions-of-confinement claims. *Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 308–09 (5th Cir. 2020). Specifically, there is "no meaningful difference between" *Monell*'s requirement of a policy or custom and condition-of-confinement's requirement of an "intended condition or practice" by jail officials. *Duvall*, 631 F.3d at 208; *Bonilla*, 982 F.3d at 308. Further, the standard of causation "appears to be the same." *Bonilla*, 982 F.3d at 308. These near-identical requirements mean Plaintiffs fail to sufficiently allege a conditions-of-confinement claim even though they need not allege deliberate indifference. *See Duvall*, 631 F.3d at 207 (explaining pleading deliberate indifference is not required for a conditions-of-confinement claim). Plaintiffs' *Monell* claim failed for lack of a sufficiently alleged custom that was the moving force behind a constitutional violation. That same missing custom means "a pervasive pattern of serious deficiencies in providing for [the detainee's] basic human needs" is not sufficiently alleged for a conditions-of-confinement claim. *Shepherd*, 591 F.3d at 454. Thus, the failure of Plaintiffs' *Monell* claim "is fatal" to Plaintiffs' conditions-of-confinement claim. *Bonilla*, 982 F.3d at 308.

### III. Episodic Acts or Omissions

Finally, Plaintiffs' episodic-act-or-omissions claim fails for similar reasons. Properly pleading an episodic-act-or-omissions claim requires a plaintiff plead facts showing "(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (alteration in original) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir.

2008)). Focusing on the deliberate indifference prong, the jail official must have had both a "subjective knowledge of a substantial risk of serious harm" to the detainee *and* "responded to that risk with deliberate indifference." *Est. of Henson*, 795 F.3d at 464 (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)). Just like deliberate indifference for a *Monell* claim, the jail official's subjective knowledge requires facts pled which show the jail official actually "dr[ew] the inference" that a substantial risk of serious harm existed. *Est. of Henson*, 795 F.3d at 464 (quoting *Est. of Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011)). Plaintiffs contend Supreme Court precedent counsels that the Fifth Circuit incorrectly uses deliberate indifference for episodic acts claims and should instead use an objective unreasonableness standard. ECF No. 11 at 26. Plaintiffs fail to make an argument why this is so. *See* ECF No. 26. Thus, deliberate indifference remains the requirement.

Plaintiffs do not plead facts that assumed true would meet either episodic acts prong. First, as discussed, Plaintiffs do not have "written policy statements, ordinances, or regulations" nor "a widespread practice that is 'so common and well-settled as to . . . fairly represent[] municipal policy.'" *Cadena*, 946 F.3d at 728 (alteration and omission in original) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)).

Second, Plaintiffs do not sufficiently plead deliberate indifference. Nowhere do Plaintiffs allege that jail officials drew the inference that a substantial risk of serious harm existed — even assuming the facts they allege establish that jail officials knew Mr. Guerra had a seizure disorder. Assumed true, a handwritten note on an intake form that Mr. Guerra had his first seizure two weeks prior and, separately, that he needed a bottom bunk likely do not establish that jail officials knew Mr. Guerra had a seizure *disorder*. And they further do not suffice to argue that jail officials *actually drew* the inference that Mr. Guerra had a substantial risk of suffering death if left untreated for a seizure disorder. Nowhere do Plaintiffs allege more than negligence on the part of jail officials — they had a

duty to know whether Mr. Guerra had a seizure disorder and to treat him if so. But negligence does not meet the "extremely high standard" of deliberate indifference. *Austin*, 74 F.4th at 328 (quoting *Domino*, 239 F.3d at 756); *Piotrowski*, 237 F.3d at 579 ("[A] showing of simple or even heightened negligence will not suffice.") (quoting *Brown*, 520 U.S. at 407). Plaintiffs fail to allege facts establishing the *deliberativeness* of the indifference and it is there their episodic act claim doubly fails.

CONCLUSION

Accordingly, Defendant's Motion is **GRANTED**. Plaintiffs request leave to amend if the Motion is granted. ECF No. 26 at 28. Plaintiffs have already amended their complaint once in response to Defendant's previous Motion to Dismiss (ECF No. 7). But because this Court did not rule on the previous Motion to Dismiss before Plaintiffs amended, the Court **GRANTS** leave to amend once more within fourteen days of the date of this Order. FED. R. CIV. P. 15(a)(2). The case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

November 4, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE